UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANTONIO GARCIA,　　　　　　　　　　　　　　16-CV-933-MJR
　　　　　　　　　　　　　　　　　　　　　　　DECISION AND ORDER
　　　　　　Plaintiff,

　　-v-

COMMISSIONER OF SOCIAL SECURITY,[1]

　　　　　　Defendant.
_____

　　　　Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 19).

　　　　Plaintiff Antonio Garcia brings this action pursuant to 42 U.S.C. §405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying him Social Security Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Garcia's motion (Dkt. No. 11) is granted, the Commissioner's motion (Dkt. No. 17) is denied, and this case is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

## **BACKGROUND**

　　　　On February 1, 2013, Garcia filed an application for DIB alleging disability since August 1, 2012, due to left hip pain, lower back pain, neck pain, testicle pain, depression, and arthritis. (*See* Tr. 65, 152-56, 173).[2] Born in 1961, Garcia was fifty-one years old at

---

[1]　　　　The Clerk of Court is directed to amend the caption accordingly.
[2]　　　　References to "Tr." are to the administrative record in this case.

the time of his application. (Tr. 152). He served in the Army from 1980 until 1985, when he received an honorable discharge. (Tr. 299). He previously worked as a machine operator and an assistant plumber (Tr. 43-44), but he alleges that he can no longer work due to his impairments. Garcia's DIB application was denied on June 7, 2013 (Tr. 65-79), after which he requested a hearing before an Administrative Law Judge (Tr. 81-82). On April 2, 2015, Garcia appeared with counsel before Administrative Law Judge Grenville W. Harrop, Jr. (the "ALJ") for a hearing. (Tr. 39-64). On May 6, 2015, the ALJ issued his decision denying Garcia's DIB claim. (Tr. 21-38). Garcia requested review by the Appeals Council (Tr. 19-20), but on September 28, 2016, the Appeals Council denied Garcia's request, making the ALJ's decision the final decision of the Commissioner (Tr. 1-6). This action followed.

## DISCUSSION

### I. *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*,

312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II. *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's

regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to

the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

    III.    *The ALJ's Decision*

The ALJ first found that Garcia is insured for DIB through September 30, 2017. (Tr. 26). The ALJ then followed the required five-step analysis for evaluating Garcia's DIB claim. Under step one, the ALJ found that Garcia has not engaged in substantial gainful activity since August 1, 2012, his alleged onset date. (*Id.*). At step two, the ALJ concluded that Garcia has the following severe impairments: "spine disorder, dysfunction major joints and myocardial infarction." (*Id.*). At step three, the ALJ found that Garcia does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 28). Before proceeding to step four, the ALJ concluded that Garcia has the RFC to perform the full range of light work as defined in 20 C.F.R. §404.1567(b).[3] (Tr. 29). Proceeding to step four, the ALJ found that Garcia is unable to perform any of his past relevant work as a sledge machine operator, plumber-helper construction worker, or rewinder operator. (Tr. 32). At the fifth step, the ALJ considered Garcia's age, education, work experience, and RFC to conclude that Garcia can perform jobs that exist in significant numbers in the national economy. (Tr. 33). Accordingly, the ALJ found that Garcia can successfully adjust to other work and, therefore, that he has not been under a disability within the meaning of the Act from his alleged onset date of August 1, 2012 through the date of the ALJ's decision. (Tr. 33-34).

---

[3]    "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §404.1567(b).

IV. *Garcia's Challenge*

Garcia argues that the ALJ's physical RFC assessment is not supported by substantial evidence because it is based upon a consultative orthopedic examination that was conducted before he exacerbated his left knee condition and suffered a myocardial infarction (heart attack). (*See* Dkt. No. 11-1 (Garcia's Memo. of Law)).

In May 2013, shortly after filing his DIB application, Garcia visited Dr. Donna Miller for a consultative orthopedic examination. (Tr. 303-08). Garcia complained to Dr. Miller of knee pain, among other things. (Tr. 303). Dr. Miller reviewed x-rays of Garcia's left knee, which she wrote showed "no significant bony abnormality." (Tr. 305). She diagnosed Garcia with chronic neck pain, chronic lower back pain, and bilateral knee pain, and she opined that Garcia "has moderate limitation for heavy lifting, bending, carrying, reaching, pushing, pulling, kneeling and squatting." (*Id.*). Over a year later, in August 2014, Garcia visited the Veterans Affairs Medical Center ("VAMC") reporting left knee pain stemming from an injury that occurred approximately one to two months before the appointment. (Tr. 369-76). Garcia walked with a limp, and an examination of his left knee was remarkable for swelling, instability, and positive Lachman's and McMurray's tests.[4] (Tr. 373). Dr. Kent Lieber ordered x-rays of Garcia's left knee, which revealed more significant findings than those noted by Dr. Miller in reviewing the May 2013 x-rays. (Tr. 335).

Additionally, in November 2014, Garcia suffered a myocardial infarction while shoveling snow. (Tr. 317-18). He traveled by ambulance to the emergency room at Mercy Hospital, where he remained for two days (*id.*), and he thereafter received cardiac

---

[4]  A Lachman's test detects deficiency of the anterior cruciate ligament while a McMurray's test is used to determine injury to the meniscus. Stedman's Medical Dictionary (28th ed. 2006).

rehabilitation services at the VAMC (Tr. 413-15). At the ALJ hearing in April 2015, Garcia reported decreased energy as a result of the myocardial infarction. (Tr. 52).

In concluding that Garcia retains the RFC for a full range of light work, the ALJ gave great weight to Dr. Miller's opinion even though Dr. Miller rendered the opinion before Garcia exacerbated his left knee injury and suffered a myocardial infarction. (Tr. 32). Where, as here, the ALJ's RFC assessment is based upon a medical opinion issued before the claimant's medical condition deteriorated, the opinion cannot be deemed substantial evidence in support of the ALJ's RFC assessment. *See Welsh v. Colvin*, No. 14-CV-6715P, 2016 WL 836081, at *12 (W.D.N.Y. Mar. 4, 2016) (citing cases). Prior to rendering his RFC assessment, the ALJ should have developed the record with an updated opinion addressing any additional physical limitations Garcia might have due to the deterioration of his left knee condition and having suffered a myocardial infarction. The ALJ's failure to do so leaves a gap in the record that must be filled on remand.

Contrary to the Commissioner's argument, the treatment notes from Garcia's December 31, 2014 medical examination at the VAMC (Tr. 345-49) do not fill the gap in the record. These treatment notes primarily discuss Garcia's impairments, symptoms, and treatment; they hardly touch upon Garcia's residual functional capacity. *See Guillen v. Berryhill*, 697 F. App'x 107, 108-09 (2d Cir. 2017) (summary order) (remanding where the ALJ failed to obtain a medical source statement from plaintiff's treating physician and plaintiff's medical records did not "shed any light on [plaintiff's] residual functional capacity"); *cf. Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (summary order) (affirming denial of benefits where plaintiff's medical records contained an assessment of her limitations). As a lay person, the ALJ was not in a position to

interpret these VAMC treatment notes to conclude that Garcia still retained the RFC to perform light work after further injuring his knee and suffering a myocardial infarction. *See Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (noting that the ALJ, as a lay person, was not in a position to interpret the medical evidence); *see also Williams v. Berryhill*, No. 16-CV-283-FPG, 2017 WL 1370995, at *3 (W.D.N.Y. Apr. 17, 2017) ("[A]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence.") (alteration in original) (quoting *Wilson v. Colvin*, No. 13-CV-6286P, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015)).[5]

Consequently, for these reasons, the ALJ's RFC assessment is not supported by substantial evidence. On remand, the ALJ should request an opinion regarding Garcia's physical limitations from Garcia's medical provider or providers at the VAMC, where Garcia received treatment for his knee and cardiac conditions, or obtain an updated opinion regarding Garcia's physical limitations from Dr. Miller or some other consulting physician. The ALJ should also expressly evaluate on remand Dr. William Rosell's March 20, 2015 letter (Tr. 436), which Garcia argues the ALJ overlooked in rendering his decision.

## **CONCLUSION**

For the foregoing reasons, Garcia's motion for judgment on the pleadings (Dkt. No. 11) is granted, the Commissioner's motion for judgment on the pleadings (Dkt. No. 17) is

---

[5] The Commissioner's reliance on *Johnson v. Colvin*, 669 F. App'x 44 (2d Cir. 2016) (summary order) is likewise misplaced because, unlike the instant case, the ALJ in *Johnson* had before him an up-to-date letter from plaintiff's physician discussing plaintiff's improved functionality.

denied, and this case is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:   September 18, 2018
         Buffalo, New York

*/s/ Michael J. Roemer*
MICHAEL J. ROEMER
United States Magistrate Judge